FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

JUN 12 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

UNITED STATES OF AMERICA

v.

JUAN ANGEL AGUIRRE

Case No. 1:19-cr-00130-RP-1

EMERGENCY MEMORANDUM IN SUPPORT OF DEFENDANT'S

MOTION FOR COMPASSIONATE RELEASE UNDER

18 U.S.C. § 3582(c)(1)(A)

TO THE HONORABLE ROBERT PITMAN:

Defendant Juan Angel Aguirre respectfully submits this Emergency Memorandum in support of his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). Mr. Aguirre requests a reduction in sentence based on extraordinary and compelling medical circumstances, including a documented abdominal medical emergency, perforated diverticulitis, abscess, surgery, sigmoid resection, abdominal washout, ostomy placement, ongoing colostomy-site complications, pain, and inability to safely manage his condition in custody.

1 of 20

In the alternative, if the Court does not grant immediate compassionate release, Mr. Aguirre respectfully requests that the Court recommend immediate medical transfer to an appropriate federal medical facility, including FMC Fort Worth, so that his serious ongoing medical needs may be addressed.

## I. INTRODUCTION

Defendant, Juan Angel Aguirre, repeatedly sought medical attention for severe abdominal/suprapubic pain while incarcerated at FCI Big Spring. His symptoms were initially questioned and treated as possibly exaggerated or malingering. However, his condition later proved to be a serious abdominal emergency involving diverticulitis with abscess and perforation. Mr. Aguirre ultimately required outside hospital care, surgery, sigmoid resection, abdominal washout, and ostomy placement. He continues to suffer ongoing complications, including pain, abdominal bulging at the colostomy site, weakened abdominal wall issues, and continued difficulty managing his condition in prison.

The Bureau of Prisons' own administrative response acknowledges a bulging condition at the colostomy site and indicates that it may only be corrected if the colostomy is reversed. Mr. Aguirre does not believe his condition is being safely or adequately managed at FCI Big Spring.

## II. BACKGROUND

Defendant, Juan Angel Aguirre was sentenced on June 23, 2021, to 235 months of imprisonment, followed by three years of supervised release. He is currently housed at FCI Big Spring. His projected release date is June 1, 2035.

Mr. Aguirre has participated in programming while incarcerated and has attempted to pursue appropriate medical care, administrative remedies, compassionate release, and medical transfer through institutional channels.

## III. EXHAUSTION

Mr. Aguirre submitted a request for compassionate release to the Warden on or about March 3, 2026. He did not receive a response. He later followed up in writing, and institutional staff indicated that the prior request could not be located and instructed him to resubmit.

More than 30 days have passed since the original request. Therefore, the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A) has been satisfied, or, alternatively, any lack of formal response is attributable to institutional loss or failure to process his request.

## IV. EXTRAORDINARY AND COMPELLING MEDICAL REASONS

Under 18 U.S.C. § 3582(c)(1)(A), this Court may reduce a defendant's term of imprisonment after considering the factors

set forth in 18 U.S.C. § 3582(a), if extraordinary and compelling reasons warrant a reduction and the reduction is consistent with the applicable policy statement issued by the United States Sentencing Commission.

Mr. Aguirre initially reported severe abdominal pain, and the medical records reflect that his complaints were questioned before his condition progressed into a documented medical emergency involving diverticulitis with abscess, pneumoperitoneum, bowel perforation, and peritonitis. He ultimately required emergency surgery, including sigmoid resection and abdominal washout, and was left with an ostomy/colostomy. Since returning to BOP custody, he continues to experience complications, including pain, abdominal bulging, weakened abdominal wall issues, and difficulty managing the ostomy in a prison environment.

This is not a resolved medical issue. The condition remains ongoing. The BOP's response to his BP-9 acknowledges the bulging condition at the colostomy site and indicates that the condition may only be corrected if the colostomy is reversed. Mr. Aguirre also reports that he previously requested transfer to a medical facility after returning from the hospital but was told he did not qualify. Despite his serious surgical history and ongoing complications, he remains at FCI Big Spring.

Mr. Aguirre's request falls within U.S.S.G § 1B1.13(b)(1)(C). That provision recognizes extraordinary and compelling reasons where a defendant suffers from a medical condition requiring long-term or specialized medical care that is not being provided, and without which the defendant is at risk of serious deterioration in health or death.

Mr. Aguirre suffers from a serious post-surgical medical condition requiring long-term and specialized care, including gastrointestinal follow-up, surgical follow-up, ostomy/colostomy management, abdominal-wall monitoring, wound-care monitoring, and infection-risk monitoring. His medical records show that his condition progressed from repeated abdominal complaints to diverticulitis with abscess, pneumoperitoneum, bowel perforation, peritonitis, emergency sigmoid resection, abdominal washout, CCU-level care, and ostomy/colostomy placement.

This was not a brief or routine hospitalization. The records reflect approximately six weeks of outside hospitalization and treatment between September 2025 and October 2025. During that period, Mr. Aguirre's condition required multiple levels of care and extensive postoperative treatment, including management of pneumonia, wound-vac care, open-wound care, and ostomy/colostomy care.

When Mr. Aguirre returned to FCI Big Spring on October 27, 2025, he had not returned fully recovered. Records documented an open

operative incision, ongoing wound-care requirements, ostomy-care instructions, nutritional supplementation for wound healing, pain-management orders, and continuing monitoring needs. Upon his return to FCI Big Spring, Mr. Aguirre requested transfer to a medical facility or another institution capable of addressing his continuing post-surgical medical needs, but he was informed that he did not qualify.

The Bureau of Prisons' own patient-care framework recognizes the need for emergency, urgent, specialty, and inpatient medical services when clinically required. It also recognizes that medically necessary care includes care to prevent serious deterioration, reduce the risk of later harm, or address significant pain or impairment. Mr. Aguirre's condition falls within that concern because he now has a surgically altered bowel, an ostomy/colostomy, abdominal-wall complications, prior open-wound care, and continuing risk of infection or future deterioration.

The concern is supported by the medical chronology itself: when his condition became acute, he required outside hospital evaluation, transfer for higher-level diagnostic and surgical care, approximately six weeks of hospitalization, emergency sigmoid resection, abdominal washout, CCU-level care, ostomy placement, open-wound management, and return to FCI Big Spring with detailed wound-care and ostomy-care requirements. The same

institutional setting is now being asked to manage a far more complex post-surgical condition than the one that initially required outside hospitalization and transfer. His current condition cannot be separated from the level of care his medical emergency required. Under these circumstances, continued confinement at the current facility raises a serious concern that his long-term and specialized care needs cannot be safely and consistently managed there.

Because Mr. Aguirre requires long-term and specialized medical care that cannot be safely and consistently managed in his current institutional setting, and because lack of such care places him at risk of serious deterioration in health, extraordinary and compelling reasons exist under U.S.S.G. § 1B1.13(b)(1)(C). If the Court does not grant compassionate release, Mr. Aguirre respectfully requests, in the alternative, that the Court recommend immediate transfer to a Federal Medical Center or other appropriate Bureau of Prisons medical facility capable of managing his gastrointestinal, ostomy/colostomy, abdominal-wall, wound-care, and surgical follow-up needs.

## V. DAILY IMPACT AND SAFETY CONCERNS

Mr. Aguirre must live daily with an ostomy/colostomy condition while incarcerated in a prison environment that is not adequately equipped to manage his ongoing medical complications.

He experiences continuing pain, abdominal discomfort, bulging at the colostomy site, physical limitations, and anxiety regarding the possibility of another medical emergency.

Managing an ostomy in prison presents daily challenges involving hygiene, access to medical supplies, restroom access, privacy, sanitation, and physical movement. Mr. Aguirre states that his condition affects his ability to sleep comfortably, move normally, and perform daily activities without pain or discomfort.

He also reports that he is unable to participate in any institutional work assignment because of his condition, as he has been denied work programs due to the limitations imposed by his ongoing medical needs.

Mr. Aguirre also fears that if his condition worsens again, he may not receive timely or appropriate medical attention. His concern is based in part on the fact that his prior complaints of severe pain were initially dismissed before ultimately becoming a documented abdominal emergency requiring outside hospitalization, surgery, and intensive medical intervention.

The psychological impact of living with an unresolved and ongoing abdominal condition in custody has also been significant. Mr. Aguirre continues to experience fear, stress, and uncertainty regarding his future health and the adequacy of his medical care while incarcerated.

These circumstances weigh heavily in favor of compassionate release or, at minimum, immediate transfer to a federal medical facility capable of managing his ongoing surgical and gastrointestinal complications.

## VI. SECTION 3553(a) FACTORS

In considering a reduction of sentence under 18 U.S.C. § 3553(a), the Court must evaluate the factors set forth in 18 U.S.C. § 3553(a). Mr. Aguirre fully understands the seriousness of his conviction and does not minimize the conduct for which he was sentenced.

However, his current medical condition substantially changes the circumstances of continued incarceration. Mr. Aguirre has served several years of his sentence, participated in programming, pursued administrative remedies, and maintains has family support that would assist in a safe and medically supervised release.

Under these medical circumstances, continued confinement at FCI Big Spring is greater than necessary to achieve the purposes of sentencing, including deterrence, rehabilitation, and protection of the public. His ongoing health needs, which require long-term, specialized medical care that cannot be safely managed in the current institutional setting, weigh heavily in favor of compassionate release or, alternatively, immediate transfer to a

federal medical facility equipped to address his complex post-surgical and gastrointestinal needs.

## VII. RELEASE PLAN

Mr. Aguirre is working to provide a proposed release plan through his family. His half-brother has indicated willingness to provide support and housing information. Mr. Aguirre will supplement the release plan with the full address, contact information, and medical care plan as soon as available. Upon release, Mr. Aguirre would seek immediate medical evaluation for his ostomy, abdominal wall condition, hernia/bulging, and any necessary surgical follow-up.

## VIII. ALTERNATIVE REQUEST FOR MEDICAL TRANSFER

If the Court declines immediate release, Mr. Aguirre respectfully requests that the Court recommend immediate transfer to a federal medical facility, including FMC Fort Worth, or another appropriate Bureau of Prisons medical facility capable of managing post-surgical gastrointestinal complications, ostomy care, abdominal wall complications, and reversal if medically appropriate.

## IX. CONCLUSION

For the foregoing reasons, Mr. Aguirre respectfully requests that the Court grant compassionate release under 18 U.S.C. § 3582(c)(1)(A), reduce his sentence to time served, and impose any appropriate supervised release conditions. In the

alternative, he requests an immediate recommendation for medical transfer to an appropriate federal medical facility.

Respectfully submitted,

*Juan A Aguirre*

Juan Angel Aguirre

Reg. No. 40924-480

FCI Big Spring

1900 Simler Ave

Big Spring, TX 79720